**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**TERRE DU SOLEIL, LTD.**
**d/b/a AUBERGE DU SOLEIL,**
**180 Rutherford Hill Rd,**
**Rutherford, CA 94573**

*Plaintiff,*

**v.**

**UNITED STATES SMALL BUSINESS ADMINISTRATION;**
**KELLY LOEFFLER, in her official capacity as Administrator of the United States Small Business Administration; and**
**UNITED STATES OF AMERICA,**

*Defendants.*

**Civil Action No.: ____________________**

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND VACATUR**

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND VACATUR PURSUANT TO THE ADMINISTRATIVE PROCEDURE ACT**

Plaintiff, Terre du Soleil, Ltd. d/b/a Auberge du Soleil ("Auberge"), by and through undersigned counsel, brings this action against the United States Small Business Administration ("SBA"), the Administrator of the SBA, Kelly Loeffler, in her official capacity, and the United States of America (collectively, "Defendants"), and alleges as follows.

## I. NATURE OF THE ACTION

1. This action challenges SBA's attempt to transform a fully awarded, disbursed, and reported $5,000,000 Restaurant Revitalization Fund ("RRF") grant into an immediately collectible federal debt based on a post-award eligibility interpretation that is contrary to the governing statute, inconsistent with the eligibility standard SBA announced to applicants, and unexplained in light of the information SBA possessed when it approved Auberge's application.

2. Congress expressly included an “inn” within the statutory definition of an eligible RRF entity. 15 U.S.C. § 9009c(a)(4). SBA publicly implemented that provision by stating that inns qualified when onsite sales of food and beverage to the public comprised at least 33 percent of gross receipts. *See* U.S. Small Bus. Admin., *Restaurant Revitalization Fund Program Guide*, Eligibility—Eligible Entities (Apr. 2021); U.S. Small Bus. Admin., *Restaurant Revitalization Fund*, “Who can apply.” Auberge exceeded that announced test: its 2019 food-and-beverage revenue was approximately $14,294,133 out of total revenue of approximately $32,197,328, or approximately 44.4 percent.

3. Auberge disclosed its integrated restaurant-and-lodging business structure during the application process, including that the operations shared a single Employer Identification Number (“EIN”). *See* Exhibit A attached hereto. SBA nevertheless approved the application and disbursed the maximum $5,000,000 award. Auberge then relied on that approval, used the funds for eligible expenses during the covered period, and completed required post-award reporting.

4. *Nearly five years later*, SBA demanded repayment of the entire award, not because Auberge failed the 33-percent test, misused grant proceeds, failed to spend them, concealed its structure, or made a false certification, but because SBA now asserts that a restaurant associated with a hotel or motel must have a separate tax identification number. The RRF statute contains no such separate-EIN requirement for an inn.

5. On or about April 24, 2026, Auberge received a Return of Funds notice from SBA demanding that it return the $5 million RRF grant. The notice provided that Auberge may seek reconsideration of the claw back. *See* Exhibit B attached hereto. Auberge timely sought reconsideration on May 22, 2026 and supplied evidence and legal argument addressing its statutory eligibility, its satisfaction of SBA’s announced 33-percent standard, its disclosures, and SBA’s

prior approval. *See* Exhibit C attached hereto (without original exhibits included). SBA adhered to the recoupment determination and, on July 9, 2026, advised Auberge that it "cannot reconsider its decision." *See* Exhibit D attached hereto.

6. While Auberge's timely reconsideration request remained pending, SBA issued a June 16, 2026 debt notice treating the recoupment amount as subject to federal collection. *See* Exhibit E attached hereto. After SBA issued its July 9 reconsideration response, Auberge filed a debt appeal with SBA's Office of Hearings and Appeals ("OHA") on July 22, 2026. On August 27, 2026, OHA dismissed the appeal on procedural timeliness grounds, measuring the 15-day appeal period from Auberge's receipt of the June 16 debt notice rather than from SBA's later reconsideration response. *See* Exhibit F attached hereto (without original exhibits included). OHA did not decide Auberge's RRF eligibility or the merits of SBA's separate-EIN theory, and it observed that whether an RRF reconsideration determination may be challenged through a debt appeal had not been resolved.

7. The administrative process has therefore ended without any merits adjudication of SBA's new eligibility theory. SBA's April 24, 2026 Return of Funds determination and July 9, 2026 reconsideration decision maintaining that determination (collectively, the "Challenged Agency Actions") mark the consummation of SBA's decision-making process: they definitively determine Auberge's asserted repayment obligation and expose Auberge to immediate collection consequences. OHA's later procedural dismissal on August 27 neither reopened nor displaced those final determinations. The Challenged Agency Actions are therefore final agency action reviewable under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706.

8. Auberge seeks an order holding unlawful and vacating the Challenged Agency Actions; a declaration that SBA may not treat the $5,000,000 award as a past-due, legally enforceable debt on the asserted grounds; and preliminary and permanent relief preserving the status quo and

preventing collection. Vacatur is necessary to eliminate the legal consequences of SBA's unlawful determinations rather than merely postpone collection of an asserted debt that should not exist.

## II. JURISDICTION AND VENUE

9. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the APA, 5 U.S.C. §§ 701-706, the American Rescue Plan Act of 2021(establishing the RRF Program), including 15 U.S.C. § 9009c, and federal debt-collection law.

10. The APA authorizes judicial review of final agency action for which there is no other adequate remedy in a court and waives sovereign immunity for claims seeking relief other than money damages. 5 U.S.C. §§ 702, 704. Auberge seeks vacatur, declaratory relief, and prospective equitable relief (*e.g.*, estoppel of any collection activities), not compensatory money damages.

11. The Challenged Agency Actions are final within the meaning of 5 U.S.C. § 704 and *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (holding that agency action is final when it marks the consummation of the agency's decision-making process and determines rights or obligations or produces legal consequences). SBA's April 24, 2026 Return of Funds determination, as maintained on July 9, 2026, consummated SBA's decision-making on Auberge's RRF eligibility and repayment obligation, and SBA stated that it could not reconsider the decision. Those determinations impose direct legal consequences by treating $5,000,000 as immediately repayable and subject to federal collection. *See U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 597–600 (2016) (holding an agency determination final and immediately reviewable where it definitively resolved the agency's position and produced direct and appreciable legal consequences, without requiring the regulated party to await enforcement). OHA's August 27, 2026 procedural dismissal did not adjudicate, alter, or reopen the merits of those determinations.

12. Auberge pursued all of the administrative avenues SBA made available. No further administrative process remains that can provide merits review or suspend the collection consequences of the Challenged Agency Actions, and no other adequate remedy in a court would provide the record-based review and vacatur available under the APA.

13. This Court may grant declaratory relief under 28 U.S.C. §§ 2201-2202 and may postpone the effective date of agency action or preserve status or rights pending judicial review under 5 U.S.C. § 705. The Court also has authority to issue preliminary and permanent injunctive relief under Federal Rule of Civil Procedure 65 and its equitable powers.

14. Venue is proper in this District under 28 U.S.C. § 1391(e)(1) because SBA resides in this District and the challenged federal agency action was taken by an agency headquartered in Washington, D.C.

## III. <u>PARTIES</u>

15. Plaintiff, Terre du Soleil, Ltd., d/b/a Auberge du Soleil, is a California limited partnership that owns and operates a restaurant-centered inn and hospitality business in Rutherford, California.

16. Defendant, United States Small Business Administration, is an agency of the United States charged with administering the RRF program and is responsible for the recoupment, reconsideration, and collection actions challenged here.

17. Defendant, Kelly Loeffler, is the Administrator of SBA and is sued solely in her official capacity.

18. Defendant, United States of America, is named because Auberge seeks declaratory and equitable relief against the United States and its agency.

## IV. FACTUAL ALLEGATIONS

19. Auberge began as a restaurant in 1981 and later added lodging and resort components. Its food-and-beverage operations remain a substantial, public-facing component of the enterprise rather than merely a captive amenity for overnight guests.

20. Congress created the RRF in 2021 to provide grants to eligible food-and-beverage businesses affected by the COVID-19 pandemic. The statutory definition of "eligible entity" expressly includes an "inn." 15 U.S.C. § 9009c(a)(4).

21. In the eligibility guidance SBA published to RRF applicants, SBA stated that "inns" were eligible when onsite sales of food and beverage to the public comprised at least 33 percent of gross receipts. *See* U.S. Small Bus. Admin., *Restaurant Revitalization Fund Program Guide*, Eligibility—Eligible Entities (Apr. 2021); U.S. Small Bus. Admin., *Restaurant Revitalization Fund*, "Who can apply."

22. Auberge satisfied that announced eligibility standard. Its 2019 records reflected approximately $32,197,328 in total revenue and approximately $14,294,133 in food-and-beverage revenue, resulting in food-and-beverage revenue of approximately 44.4 percent of gross receipts. *See* Auberge 2019 financial records submitted to SBA, attached hereto as Exhibit G.

23. In 2021, Auberge applied for an RRF grant. SBA assigned Confirmation ID b89900115444 and SBA Loan/Award No. 9948439003.

24. During the application process, Auberge provided financial and operational information concerning the integrated business. Auberge disclosed that its lodging and restaurant operations operated under a single EIN. SBA did not tell Auberge that this disclosed structure rendered it ineligible as an inn. *See* Auberge RRF application and supporting materials, Confirmation ID b89900115444, SBA Loan/Award No. 9948439003.

25. After reviewing Auberge's submission, SBA approved the application and disbursed $5,000,000. *See* SBA award and disbursement records for Loan/Award No. 9948439003.

26. The COVID-19 pandemic materially impaired Auberge's operations and revenues, including its substantial public-facing food-and-beverage business. Auberge's RRF application documented pandemic-related revenue loss through the gross-receipts information and supporting financial records required by the program. *See* Auberge RRF application and supporting financial records, Confirmation ID b89900115444, SBA Loan/Award No. 9948439003, attached hereto as Exhibit H.

27. In its application, Auberge certified that then-current economic uncertainty made the requested funding necessary to support its ongoing or anticipated operations. SBA reviewed Auberge's application and supporting financial information, accepted that certification, and approved the award based on the pandemic-related revenue-loss information Auberge submitted. *See* Auberge RRF application and certifications; SBA award and disbursement records for Loan/Award No. 9948439003.

28. In reliance on SBA's approval, Auberge used the RRF proceeds during the covered period for expenses authorized by 15 U.S.C. § 9009c(c)(5) and submitted the required use-of-funds reporting and supporting financial information to SBA. The reported expenditures totaled the full $5,000,000 award and were incurred for authorized expenses within the covered period. *See* Auberge RRF use-of-funds reports and supporting financial records submitted to SBA.

29. SBA does not allege that Auberge failed to sustain pandemic-related revenue loss, lacked economic need when it applied, committed fraud, concealed its integrated structure, made a false certification, misused RRF funds, retained unused funds after the covered period, or failed to satisfy the covered-period spending or reporting requirements. SBA's repayment demand instead

rests on its new position concerning Auberge's previously disclosed common EIN. *See* SBA Return of Funds Letter to Auberge (Apr. 24, 2026), Exhibit B.

30. The RRF program was designed and launched on an exceptionally compressed schedule. Congress enacted the program on March 11, 2021; SBA's final Program Guide was effective April 28, 2021; and SBA opened the application portal on May 3, 2021—only five days later. Within the first two days, SBA received more than 186,000 applications, and within the first week it approved more than 16,000 awards totaling over $2 billion. *See* SBA, *Restaurant Revitalization Fund Program Guide* (effective Apr. 28, 2021), attached as Exhibit I; SBA, *Administrator Announces Initial Results of Restaurant Revitalization Fund* (May 6, 2021), attached as Exhibit J; SBA, *The SBA Funds 16,000 Restaurant Revitalization Fund Awards* (May 10, 2021), attached as Exhibit K.

31. SBA promoted the application process as streamlined and free of burdensome bureaucratic hurdles, while simultaneously advising that its staff were limited in answering applicant-specific questions about eligibility, potential award amounts, and other details. The public-facing materials directed applicants principally to a short Program Guide, a knowledge base, webinars, and a call center. Those materials identified inns as eligible under the 33-percent food-and-beverage test but did not state that a qualifying inn's restaurant operations had to use an EIN separate from its lodging operations. *See* SBA, *SBA Announces Official Restaurant Revitalization Fund Application and Guidelines* (Apr. 19, 2021), Exhibit L; SBA, *Restaurant Revitalization Fund*, "Get help with your application" and "Who can apply.", Exhibit M.

32. Subsequent independent reviews confirmed that the program's speed was not matched by a coherent or validated control structure. In July 2022, the Government Accountability Office found systemic weaknesses in SBA's RRF controls, reported that SBA had not assessed the effectiveness

of its pre-award controls, and recommended that SBA evaluate and correct those deficiencies and take additional steps to identify potentially fraudulent or ineligible awards. *See* U.S. Gov't Accountability Off., *Restaurant Revitalization Fund: Opportunities Exist to Improve Oversight*, GAO-22-105442 (July 2022), attached as Exhibit N.

33. SBA did not publish a conventional, consolidated agency FAQ addressing recurring substantive eligibility questions before the portal opened. Instead, applicants were directed to a short Program Guide, a sample application, a separate online knowledge base, recorded webinars, and a call center whose staff SBA expressly said were limited in answering specific eligibility questions. Industry associations filled the resulting gap by publishing and repeatedly updating their own FAQs as SBA released new information. Those contemporaneous industry materials repeated the 33-percent gross-receipts test for inns and likewise did not identify a separate-EIN condition for an inn's restaurant operations. *See* SBA, *Restaurant Revitalization Fund*, "Get help with your application"; National Restaurant Association, *Frequently Asked Questions: Restaurant Revitalization Grants* (Apr. 2021).

34. In March 2024, SBA's Office of Inspector General likewise concluded that SBA's implementation plan omitted program requirements, SBA did not always follow its own plan, and the agency lacked sufficient controls to ensure that applicants met statutory and program requirements. The Inspector General estimated that SBA had disbursed nearly $6.7 billion without sufficiently verifying eligibility and expressly recommended that SBA review previously approved awards and recover funds from recipients SBA later determined did not satisfy eligibility requirements or exceeded statutory limits. *See* SBA Office of Inspector General, *SBA's Restaurant Revitalization Fund Program Award Practices*, Report 24-09 (Mar. 26, 2024), attached as Exhibit O. SBA's April 2026 demand against Auberge is the precise type of retrospective award review

and recovery action the Inspector General recommended: SBA revisited a grant it had approved and fully disbursed, reclassified the recipient as ineligible, and demanded return of the entire award. But SBA did so without identifying any newly discovered fact, fraud, concealment, misuse, or statutory ineligibility and without explaining why its own acknowledged pre-award control failures warranted imposing a $5,000,000 loss on Auberge.

35. The chronology and asserted basis of SBA's demand connect the agency's acknowledged oversight failures to Auberge's claw back. In 2021, SBA chose a rapid rollout, supplied fragmented guidance, limited applicant-specific answers, reviewed Auberge's disclosed integrated operations and common EIN, approved the award, and accepted Auberge's use-of-funds reporting. In 2022 and 2024, GAO and SBA's Inspector General criticized SBA's eligibility controls, and the Inspector General directed SBA to review completed awards and pursue recovery. In 2026, SBA did exactly that to Auberge but used the same common-EIN fact it possessed before approval as the basis for retroactively declaring the award ineligible. The challenged claw back therefore did not arise from any intervening conduct by Auberge; it arose from SBA's later reexamination of its own earlier approval under a separate-EIN criterion that had not appeared in the statute, the published eligibility list, the inn-specific 33-percent test, or the applicant-facing materials.

36. On April 24, 2026, nearly five years after approving Auberge's application, SBA issued a Return of Funds letter demanding repayment of the entire $5,000,000 award. *See* SBA Return of Funds Letter to Auberge (Apr. 24, 2026), Exhibit B.

37. SBA stated, in substance, that hotels and motels are not eligible entities, that a restaurant within a hotel or motel must possess a separate tax identification number, and that Auberge's common EIN prevented SBA from separating its restaurant operation from its lodging operation for eligibility purposes. *See id.*

38. SBA's rationale did not apply the 33-percent standard it had announced for inns, did not identify any statutory text making a separate EIN an eligibility criterion, and did not explain why Congress's express inclusion of an "inn" could be displaced by relabeling Auberge as a hotel or motel based solely on the same integrated structure SBA knew when it approved the application.

39. The RRF statute does not require a qualifying inn to maintain separate EINs for its restaurant and lodging operations. Nor does the statute authorize SBA to convert its ability to administratively distinguish business components into a substantive condition of eligibility that Congress did not enact. *See* 15 U.S.C. § 9009c(a)(4).

40. SBA identified no post-award change in Auberge's ownership, organizational structure, EIN, food-and-beverage operations, or use of funds that could justify a different eligibility determination. The fact SBA now treats as dispositive was disclosed before approval, and SBA approved the award without warning Auberge that the common EIN created any eligibility defect.

41. Auberge disputed the repayment demand by letter dated May 22, 2026 and supplemented its submission by email dated June 12, 2026. Auberge explained, among other things, that it qualified as an inn, exceeded SBA's 33-percent threshold, had disclosed its business structure to SBA, and had used the grant for authorized expenses. *See* Auberge Request for Reconsideration (May 22, 2026), Exhibit C; Auberge Supplemental Reconsideration Submission (June 12, 2026), Exhibit P.

42. SBA nevertheless maintained the demand. By email dated July 9, 2026, SBA stated that it "cannot reconsider its decision." In attempting to justify that determination, SBA further asserted that its "upfront program rules for RRF" provided: "Eligible entities include any of the above entities located in an airport terminal or that operate independently (i.e. has its own tax identification number) inside another business (e.g. a restaurant that operates independently inside

a hotel or conference center) or that are a Tribally owned concern." SBA then stated: "It was clear that the restaurant had to have its own EIN and operate separately." See SBA Reconsideration Email to Auberge (July 9, 2026), Exhibit D.

43. SBA's reliance on that language did not address the eligibility category under which Auberge qualified. Auberge did not seek eligibility on the theory that it was a restaurant operating independently "inside another business." Auberge qualified as an "inn," a category Congress expressly included in the statutory definition of an eligible entity. SBA's applicant-facing guidance separately addressed inns and provided a specific eligibility test for them: onsite sales of food and beverage to the public had to comprise at least 33 percent of gross receipts. Auberge exceeded that threshold, with approximately 44.4 percent of its 2019 gross receipts attributable to food-and-beverage revenue.

44. The distinction is material. The language quoted by SBA concerns when an eligible food-and-beverage establishment located "inside another business" may qualify independently from the surrounding business, illustrated by a restaurant operating independently inside a hotel or conference center. Nothing in the quoted language states that an inn, itself expressly eligible under the statute and subject to SBA's separate 33-percent test, must divide its restaurant and lodging operations into separate tax-identification numbers. SBA thus treated a provision addressing an independently operated establishment within another business as though it imposed an additional eligibility condition on the integrated operations of an inn, without identifying the textual or legal basis for doing so.

45. SBA also did not explain how its assertion that the separate-EIN requirement was "clear" could be reconciled with its approval of Auberge's application after Auberge disclosed the organizational structure and common EIN SBA later deemed disqualifying. SBA identified no

misrepresentation, concealment, or intervening change in Auberge's structure. If, as SBA asserted in 2026, the common EIN clearly rendered Auberge ineligible under rules existing when it applied, SBA possessed the information necessary to make that determination before approving and disbursing the award. The July 9 response did not explain that inconsistency, why the "inside another business" provision governed Auberge rather than the inn-specific eligibility standard, or how SBA accounted for Auberge's completed performance and reliance on the agency's approval.

46. While Auberge's reconsideration request remained pending, SBA issued a June 16, 2026 Notice of Debt treating the $5,000,000 recoupment amount as subject to federal collection and identifying potential consequences including administrative offset, referral for collection, and associated interest, penalties, fees, and credit-reporting consequences as applicable. *See* SBA Notice of Debt to Auberge (June 16, 2026), Exhibit E. The debt notice preceded SBA's July 9 response maintaining the underlying recoupment determination.

47. After SBA issued its July 9 reconsideration response, Auberge filed an OHA debt appeal on July 22, 2026. On August 27, 2026, OHA dismissed the appeal solely on procedural timeliness grounds. OHA measured the 15-day debt-appeal period from Auberge's receipt of the June 16 debt notice and concluded that SBA's later reconsideration response did not restart that period. *See* OHA Order of Dismissal (Aug. 27, 2026).

48. OHA did not adjudicate Auberge's statutory eligibility, SBA's separate-EIN theory, or the lawfulness of the underlying recoupment determination. OHA also observed that it had not resolved whether an RRF reconsideration determination may be challenged through a debt appeal. Auberge does not include the OHA dismissal within the defined Challenged Agency Actions; the order is relevant because it left the April 24 recoupment determination and July 9 reconsideration

response undisturbed and supplied no administrative merits review of the asserted debt. *See* OHA Order of Dismissal (Aug. 27, 2026).

49. As a result, the agency process has produced a $5,000,000 collection demand without an administrative merits adjudication of Auberge's challenge to the underlying recoupment theory.

50. The asserted debt and threatened collection expose Auberge to concrete and ongoing financial and operational harm. The administrative process has concluded: SBA has stated that it cannot reconsider the repayment determination, OHA has dismissed Auberge's debt appeal, and no administrative stay presently protects Auberge from collection. SBA has already treated the full $5,000,000 as a collectible federal debt and has identified administrative offset, referral for collection, interest, penalties, fees, reporting consequences, and related collection measures as potential consequences. Collection therefore does not depend on any further merits adjudication of Auberge's eligibility challenge.

51. Absent judicial relief preserving the status quo, SBA may certify or refer the asserted debt for collection, pursue administrative offset, report the obligation as delinquent, or impose collection-related charges before this Court can adjudicate the legality of the Challenged Agency Actions. Immediate collection of $5,000,000 would materially impair Auberge's liquidity and could impair existing financing relationships, compliance with financial covenants, planned capital expenditures, and ordinary business operations. Auberge will support these injuries, including the magnitude and timing of the threatened liquidity and financing consequences, through declarations and contemporaneous financial records submitted with any motion under 5 U.S.C. § 705 or Rule 65.

## V. CAUSES OF ACTION

### COUNT I - IMMINENT COLLECTION, IRREPARABLE HARM, AND PRESERVATION OF THE STATUS QUO

52. SBA has completed its consideration of Auberge's challenge. SBA stated on July 9, 2026 that it "cannot reconsider its decision," and OHA dismissed Auberge's administrative appeal on August 27, 2026. No administrative merits proceeding remains pending, and no administrative stay presently prevents SBA from acting on the debt notice.

53. SBA's June 16, 2026 Notice of Debt treats the full $5,000,000 as subject to federal collection and identifies administrative offset, referral, interest, penalties, fees, and other collection consequences. Thus, collection may proceed without any further agency adjudication of the statutory eligibility issue presented here.

54. Auberge timely invoked SBA's reconsideration procedure before SBA issued the Notice of Debt. Yet SBA issued the debt notice while reconsideration remained pending; after SBA denied reconsideration on July 9, Auberge promptly appealed to OHA; and OHA then measured its separate 15-day appeal period from the earlier debt notice and dismissed the appeal without reaching the merits. The result is that SBA treated the alleged obligation as collectible before completing reconsideration, while the administrative process ultimately supplied no merits adjudication of the legal and factual objections that Auberge had timely presented.

55. SBA has never made a reasoned finding that Auberge was not an "inn" within 15 U.S.C. § 9009c(a)(4), never found that Auberge failed the published 33-percent food-and-beverage test applicable to inns, and never identified a contemporaneous statutory provision, regulation, Program Guide provision, application instruction, award condition, or other applicant-facing rule making a separate EIN a condition of an inn's eligibility. Nor did SBA explain whether its

separate-EIN criterion existed when Auberge applied in 2021 or instead arose during later post-award review.

56. Auberge's status as an inn and the public-facing character of its food-and-beverage operations are independently demonstrated by its history and operations. Auberge began as a restaurant before lodging was added; its restaurant remained a substantial component of the integrated enterprise; and its 2019 food-and-beverage revenue represented approximately 44.4 percent of total gross receipts. To the extent reflected in the administrative record, Auberge's contemporaneous application materials, financial records, marketing materials, reservation practices, patron information, and other operational evidence further demonstrate that its food-and-beverage operations served the public and were not merely a captive amenity for overnight lodging guests.

57. Immediate collection of $5,000,000 during judicial review would impose consequences that cannot adequately be remedied merely by a later declaration concerning the legality of SBA's action. In addition to the immediate loss of substantial liquidity, collection threatens concrete financing, credit, covenant, capital-planning, and operational consequences. Auberge will establish the specific magnitude and imminence of those consequences through declarations and supporting financial records in connection with its request for interim relief.

58. Interim relief would preserve, rather than alter, the longstanding status quo. SBA approved and disbursed the grant in 2021, Auberge used the proceeds for authorized expenses during the covered period, and SBA waited nearly five years before demanding repayment. A temporary postponement of collection while this Court conducts expedited review of the administrative record would protect Auberge against irreversible collection consequences without preventing the Government from pursuing any obligation that remains legally enforceable after final judgment.

**COUNT II - VIOLATION OF THE APA: ARBITRARY AND CAPRICIOUS ACTION, UNEXPLAINED REVERSAL, LACK OF FAIR NOTICE, AND PROCEDURAL ERROR**

59. Auberge incorporates the preceding paragraphs as though fully set forth herein.

60. Under 5 U.S.C. § 706(2)(A), a reviewing court shall hold unlawful and set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

61. SBA was required to examine the relevant information and articulate a satisfactory explanation connecting the facts found to the decision made. It was also required to address important aspects of the problem presented by Auberge's reconsideration submission. *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43 (1983) (holding agency action arbitrary and capricious where the agency failed to consider an important aspect of the problem, offered an explanation contrary to the evidence, or failed to articulate a rational connection between the facts found and the choice made). And the Challenged Agency Actions may be sustained, if at all, only on the grounds SBA invoked when it acted—not on post hoc rationales supplied in litigation. *SEC v. Chenery Corp.*, 318 U.S. 80, 87, 94–95 (1943) (holding that an agency order must stand or fall on the grounds invoked by the agency and cannot be upheld on findings or rationales the agency might have adopted but did not).

62. SBA failed to engage in reasoned decision-making because it neither applied the rule governing the statutory category under which Auberge qualified nor explained why that rule ceased to control. The determination did not meaningfully address Congress's express inclusion of inns; Auberge's approximately 44.4-percent food-and-beverage revenue; SBA's announced 33-percent eligibility standard for inns; Auberge's disclosure of the common EIN before approval; SBA's approval on those disclosed facts; Auberge's compliant expenditure and reporting of the full award; the absence of fraud, concealment, misuse, or changed circumstances; or the evidence and arguments Auberge presented in its May 22 and June 12 reconsideration submissions. Nor did

SBA identify any factual finding that Auberge was not an inn, any defect in Auberge's revenue calculation, or any connection between the common EIN and the statutory eligibility criteria. By substituting an administrative labeling rule for analysis of the statutory category and record evidence, SBA failed to consider central aspects of the problem and failed to articulate a rational connection between the facts found and the full $5,000,000 repayment demand.

63. SBA's July 9 explanation does not cure these defects. The language SBA invoked addresses eligible establishments that operate independently "inside another business," illustrated by "a restaurant that operates independently inside a hotel or conference center." SBA did not explain why that provision governed Auberge instead of the specific eligibility provision for inns, or why an inn satisfying SBA's 33-percent food-and-beverage threshold must additionally establish that its restaurant is a separately identified business operating "inside" the inn. SBA therefore failed to explain why a provision addressing one organizational arrangement displaced the eligibility standard it specifically announced for the statutory category to which Auberge belonged.

64. SBA also reversed its treatment of the same disclosed organizational fact without acknowledging the change, identifying any new evidence, explaining why its prior approval was erroneous, or accounting for the serious reliance interests its approval created. The original approval necessarily treated Auberge's disclosed integrated structure and common EIN as compatible with eligibility; the 2026 determination treated that identical fact as categorically disqualifying. Auberge could not unspend the grant after using it for authorized pandemic-period expenses, restructure its historical operations retroactively, or seek substitute relief after the RRF was exhausted. The five-year delay therefore magnified, rather than diminished, the reliance interests SBA was required to confront. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515–16 (2009) (requiring awareness of a changed position and a more detailed justification when

prior policy engendered serious reliance interests); *Department of Homeland Security v. Regents of the University of California*, 591 U.S. 1, 30–33 (2020) (holding rescission arbitrary and capricious where the agency failed to assess and weigh reliance interests); *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221–22 (2016) (holding an inadequately explained policy reversal arbitrary and capricious).

65. The separate-EIN criterion, as applied to Auberge, also lacked fair notice and was impermissibly applied retroactively. When Auberge applied, the statute expressly identified inns as eligible, and SBA told inns to measure whether onsite food-and-beverage sales to the public comprised at least 33 percent of gross receipts. Although SBA guidance referred to a separate tax-identification number in describing a restaurant or other eligible establishment operating independently "inside another business," neither that language nor the inn-specific eligibility guidance stated that an inn satisfying the 33-percent test was required to maintain a separate EIN for its restaurant and lodging components. SBA's 2026 determination transformed the former provision into an additional substantive condition on the eligibility of inns and attached a $5,000,000 consequence to conduct completed years earlier in reliance on SBA's approval. *See Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155–56 (2012) (declining deference where a newly announced interpretation would impose massive retroactive liability without fair warning); *General Electric Co. v. EPA*, 53 F.3d 1324, 1328–30 (D.C. Cir. 1995) (vacating liability imposed without fair warning); *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 208–09 (1988) (holding that agencies lack retroactive rulemaking authority absent express congressional authorization).

66. SBA's action is unlawful under either possible characterization of the separate-EIN criterion. If SBA treated it as a binding substantive eligibility rule of general applicability, the

criterion altered the rights and obligations of inns, supplied the sole basis for a multi-million-dollar repayment obligation, and was not adopted through the procedure required for a legislative rule. If SBA instead characterizes it as an interpretation announced through adjudication, SBA failed to justify applying that undisclosed interpretation retroactively to Auberge despite contrary applicant-facing guidance, full disclosure, prior approval, completed performance, and settled reliance. And under either characterization, SBA compounded the defect by responding to Auberge's material evidence and legal objections only with the unexplained statement that it "cannot reconsider its decision," without findings, analysis, or an explanation capable of judicial review. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196–97 (1947) (requiring the agency to disclose the grounds for its action).

67. The record, as presently known, does not support SBA's dispositive characterization of Auberge as an ineligible hotel or motel. It shows that Auberge exceeded SBA's published threshold for inns, disclosed its integrated operations and common EIN, received approval, and used the award for authorized expenses. SBA identified no fraud, concealment, misuse, changed fact, erroneous award calculation, or statutory provision establishing that the common EIN defeated eligibility. Those evidentiary defects demonstrate arbitrary and capricious action under § 706(2)(A) and, to the extent § 706(2)(E) applies, findings unsupported by substantial evidence.

68. SBA's compressed rollout, fragmented guidance, limited applicant-specific answers, and unvalidated pre-award controls reinforce the absence of a reasoned nexus between the later oversight concerns and the full claw back imposed on Auberge. After GAO and the Inspector General criticized SBA's program-wide controls and the Inspector General recommended retrospective review and recovery, SBA revisited Auberge's completed award and treated the same common-EIN fact it possessed before approval as newly dispositive. But the identified oversight

failures concerned SBA's own verification and control processes; SBA did not explain how Auberge's disclosed EIN caused or concealed an eligibility defect, why the 33-percent inn test was insufficient, or why full repayment rather than any narrower corrective measure followed from the cited concern. Moving directly from program-wide criticism to a recipient-specific $5,000,000 claw back, without identifying fraud, concealment, misuse, new evidence, or violation of a contemporaneous rule, shifted the consequences of SBA's deficient review to the recipient without reasoned justification. The Challenged Agency Actions are therefore arbitrary, capricious, an abuse of discretion, unsupported by the record, adopted without observance of required procedure, and must be held unlawful and set aside under 5 U.S.C. § 706(2)(A), (D), and, to the extent applicable, (E).

## COUNT III - VIOLATION OF THE APA: CONTRARY TO LAW AND IN EXCESS OF STATUTORY AUTHORITY

69. Auberge incorporates the preceding paragraphs as though fully set forth herein.

70. The APA requires the Court to set aside agency action that is not in accordance with law or exceeds statutory jurisdiction, authority, or limitations. 5 U.S.C. § 706(2)(A), (C). In deciding whether SBA acted within the authority Congress granted, the Court must exercise its own independent judgment and determine the best reading of 15 U.S.C. § 9009c. The question is not whether SBA's separate-EIN interpretation is a reasonable response to perceived ambiguity; statutory ambiguity does not transfer interpretive authority from the Court to SBA. *See Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 400, 412–13 (2024) (holding that the APA requires courts to exercise independent judgment on questions of statutory meaning and forbids deference to an agency interpretation merely because the statute is ambiguous).

71. The best reading of § 9009c includes Auberge within the statutory category Congress chose. Congress expressly made an "inn" an eligible entity and separately enacted specific

exclusions and eligibility limitations, demonstrating that it knew how to withhold eligibility when it wished to do so. It did not require a qualifying inn to divide its restaurant and lodging operations among separate legal entities or EINs, and it did not authorize SBA to substitute a tax-identifier requirement for the statutory category. Reading an unwritten separate-EIN condition into the statute would narrow "inn," substantially impair the express inclusion of integrated inn operations, and add a restriction Congress did not enact.

72. Nothing in § 9009c delegates to SBA authority to redefine "inn" through an EIN-based limitation, and statutory silence concerning EINs is not such a delegation. Any discretion to administer applications, verify revenue, or distinguish eligible from ineligible businesses remains bounded by the categories and conditions Congress enacted. SBA may choose reasonable procedures for determining whether an applicant is an inn and satisfies the governing revenue test; it may not resolve an administrative-processing difficulty by replacing those statutory criteria with a materially narrower rule. *See Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 325–28 (2014) (rejecting an agency interpretation that rewrote statutory terms to make a regulatory program function as the agency preferred).

73. Auberge qualifies under that best reading. It operates a restaurant-centered inn whose onsite food-and-beverage revenue to the public comprised approximately 44.4 percent of gross receipts—more than eleven percentage points above SBA's announced 33-percent threshold. SBA did not find that those sales were ineligible or inaccurately reported. Its asserted inability to separate business components under a common EIN is therefore an administrative preference, not a permissible construction of the statute. By making the common EIN dispositive notwithstanding Auberge's satisfaction of the statutory category and every eligibility criterion SBA identified for inns, SBA imposed an extra-statutory bar and exceeded the authority Congress conferred.

74. The language SBA invoked in its July 9 decision confirms rather than cures the statutory defect. That provision addresses when an establishment located "inside another business" can qualify as an eligible entity in its own right. Auberge's eligibility does not depend upon treating its restaurant as a separate eligible entity operating inside an otherwise ineligible hotel. Congress expressly identified the integrated business category at issue here, an "inn," as an eligible entity. SBA therefore cannot avoid Congress's inclusion of inns by requiring the restaurant component of an inn to establish independent eligibility under a provision directed to businesses operating inside other businesses. Doing so converts the statutory question from whether Auberge is an eligible inn into whether Auberge contains a separately eligible restaurant and thereby materially narrows the category Congress enacted.

75. Independently, and in the alternative, even assuming SBA possesses some authority to recover an award subsequently shown to have been unlawfully made, that authority does not permit SBA to manufacture ineligibility years later by retroactively applying a substantive eligibility restriction that appears nowhere in the statute or in the eligibility criteria communicated to Auberge when it applied. The RRF's express return-of-funds provisions identify circumstances requiring repayment, including unused funds and cessation of operations during the covered period. 15 U.S.C. § 9009c(c)(6). Auberge used the full award for authorized expenses, remained in operation, and is not alleged to have committed fraud, made a false statement, diverted proceeds, retained unused funds, or violated an express award condition. At minimum, any asserted recovery authority remains bounded by the statute, the APA, contemporaneous program requirements, and reasoned decision-making, and cannot sustain the challenged claw back on the unpublished separate-EIN theory alleged here.

76. Exercising the independent judgment required by the APA and *Loper Bright*, the Court should hold that § 9009c neither permits SBA to exclude an otherwise qualifying inn solely because its integrated operations share an EIN nor authorizes the resulting claw back from Auberge under the circumstances alleged. The Challenged Agency Actions are therefore contrary to law and in excess of statutory authority and must be held unlawful and set aside under 5 U.S.C. § 706(2)(A) and (C).

**COUNT IV - VIOLATION OF THE APA AND FEDERAL DEBT-COLLECTION LAW: UNLAWFUL CERTIFICATION AND COLLECTION OF AN ALLEGED FEDERAL DEBT**

77. Auberge incorporates the preceding paragraphs as though fully set forth herein.

78. Administrative offset under 31 U.S.C. § 3716 may proceed only after the agency has a valid claim and affords the debtor the statutory safeguards, including written notice of the nature and amount of the claim and the agency's intention to collect by offset, access to relevant agency records, an opportunity for agency review of the decision related to the claim, and an opportunity to enter a written repayment agreement. Those protections require a meaningful opportunity to contest the legal and factual predicate of the asserted debt; they are not satisfied by a process that treats the underlying liability as conclusively established while providing no forum authorized to adjudicate the merits.

79. Federal debt-collection regulations likewise condition referral and offset on a debt being valid, delinquent or past due, and legally enforceable, as applicable. *See, e.g.*, 31 C.F.R. §§ 285.5, 901.3.

80. The asserted $5,000,000 debt has no source independent of SBA's recoupment determination: it is not based on a loan, payment default, settlement, judgment, unused balance, or admitted overpayment. Its existence, amount, delinquency, and enforceability all depend on the

proposition that Auberge was ineligible for the RRF award and must return the full grant. Because that predicate determination is contrary to 15 U.S.C. § 9009c, exceeds SBA's authority, and was reached through arbitrary and procedurally defective decision-making, SBA lacks a lawful basis to certify the derivative amount as a valid, past-due, legally enforceable federal debt.

81. SBA's sequence foreclosed meaningful merits review of the claim before treating it as collectible. Auberge timely requested reconsideration of the April 24 recoupment determination and supplemented that request with evidence and legal argument. While reconsideration remained pending, SBA issued the June 16 debt notice. SBA then responded on July 9 only that it "cannot reconsider its decision." Auberge filed a debt appeal on July 22, but OHA measured the separate 15-day appeal period from receipt of the June 16 notice, concluded that the July 9 response did not restart that period, and dismissed without deciding eligibility or the lawfulness of the separate-EIN theory. OHA further observed that it had not resolved whether an RRF reconsideration determination could be challenged through a debt appeal. Thus, SBA's reconsideration channel supplied no reasoned merits determination, and the debt-appeal channel supplied no merits adjudication. To the extent SBA relies on those procedures as the review required by 31 U.S.C. § 3716(a)(3), they did not provide a meaningful opportunity for agency review of the decision creating the claim.

82. Because OHA expressly declined to reach the merits, no agency adjudicator has determined, after considering Auberge's statutory and factual objections, that the separate-EIN criterion lawfully rendered Auberge ineligible. SBA cannot satisfy the review contemplated by 31 U.S.C. § 3716(a)(3) by commencing the collection process while a timely merits reconsideration remains pending and then relying on the intervening debt notice to foreclose a later debt appeal before the reconsideration process has run its course. On the facts alleged, Auberge was left without a

meaningful agency forum that adjudicated the legal predicate of the asserted debt before collection consequences attached.

83. SBA may not create a collectible debt merely by labeling an unlawful recoupment demand a debt. Any certification that the amount is valid, delinquent, past due, or legally enforceable necessarily carries forward the legal and factual defects in the predicate determination. Accordingly, any referral to Treasury or another collection component, administrative offset, interest, penalties, fees, adverse reporting, or other collection activity based on that certification is arbitrary, capricious, contrary to law, in excess of authority, and undertaken without observance of required procedure under 5 U.S.C. § 706(2)(A), (C), and (D).

**COUNT V - DECLARATORY RELIEF: NO PRESENTLY PAST-DUE, LEGALLY ENFORCEABLE $5,000,000 DEBT**

84. Auberge incorporates the preceding paragraphs as though fully set forth herein.

85. An actual, concrete, and substantial controversy exists between Auberge and Defendants regarding whether the $5,000,000 RRF award constitutes a presently past-due and legally enforceable debt of Auberge to the United States. The dispute is neither hypothetical nor contingent: SBA has issued a repayment demand and debt notice, maintained the demand after reconsideration, treated the full amount as subject to federal collection, and exposed Auberge to offset, referral, interest, penalties, fees, reporting consequences, and related business disruption.

86. Auberge contends that no such debt exists because it qualified as an “inn” under the governing statute and SBA’s announced eligibility standard, exceeded the published 33-percent threshold, disclosed the integrated structure and common EIN on which SBA now relies, received SBA approval on those facts, used the full grant for eligible expenses, and satisfied its reporting obligations. No statute, contemporaneous guidance, award condition, or finding of fraud, misuse,

unused funds, closure, or false certification supplies an independent repayment obligation. The asserted debt therefore rises or falls with the unlawful Challenged Agency Actions.

87. Defendants contend, or have acted on the definitive premise, that Auberge must repay $5,000,000 immediately and that the amount is a valid federal debt subject to collection. The parties' positions are therefore squarely adverse on a dispositive legal question with present consequences: whether SBA may enforce the award as a debt based solely on the separate-EIN theory stated in the Challenged Agency Actions.

88. A declaration that the Challenged Agency Actions do not establish a presently past-due, legally enforceable $5,000,000 debt would conclusively resolve the parties' dispute, eliminate the asserted legal predicate for collection, and redress Auberge's ongoing exposure to offset, referral, accruals, reporting consequences, and business disruption. Declaratory relief is therefore appropriate under 28 U.S.C. §§ 2201–2202 and the APA.

## PRAYER FOR RELIEF

**WHEREFORE**, Auberge respectfully requests that the Court enter judgment in its favor and,

A. Declare that the Challenged Agency Actions are arbitrary, capricious, contrary to law, in excess of statutory authority, without observance of procedure required by law, and otherwise unlawful under 5 U.S.C. § 706(2);

B. Hold unlawful, vacate and set aside the Challenged Agency Actions and all certifications, referrals, offsets, reporting, accruals, or collection measures that depend on them;

C. Declare that, absent a new lawful final determination following any remand, the asserted $5,000,000 obligation is not a presently past-due, legally enforceable debt subject to federal collection;

D. Pursuant to 5 U.S.C. § 705 and, in the alternative, Federal Rule of Civil Procedure 65, postpone the effective date and enforcement of the Challenged Agency Actions and preliminarily and permanently enjoin Defendants, pending final judicial review and thereafter as necessary to effectuate the Court's judgment, from certifying or referring the asserted obligation to Treasury or any other collection component, administratively offsetting the asserted debt, reporting it as delinquent, or assessing or collecting interest, penalties, fees, or other collection-related charges based on the asserted $5,000,000 obligation;

E. In the alternative, remand the matter to SBA with vacatur for a new determination consistent with 15 U.S.C. § 9009c, the APA, the complete administrative record, and this Court's judgment, and prohibit collection unless and until SBA issues a new lawful final determination after providing Auberge a meaningful opportunity to be heard;

F. Direct SBA to produce and lodge the complete administrative record, including the materials before SBA when it approved Auberge's application; all versions of applicant-facing RRF eligibility guidance in effect during the application period; internal guidance, instructions, decisional materials, or interpretations concerning the relationship between the statutory "inn" category, the 33-percent food-and-beverage standard, and the provision addressing a restaurant or other entity operating independently "inside another business"; Auberge's reconsideration submissions; materials considered in the 2026 recoupment determination; and the debt-collection and OHA records;

G. Award Auberge its costs and reasonable attorneys' fees to the extent authorized by law; and

H. Expedite merits briefing and review as necessary to permit prompt resolution of the record-based APA claims while interim relief remains in effect; and

I. Grant such other and further relief as the Court deems just and proper.

Dated: October __, 2026

Respectfully submitted,

_______________________________

J. Chris White (D.C. Bar No. 1742758)
CLARK HILL PLC
601 13th Street, N.W., Suite 600
Washington, D.C. 20005
Telephone: (202) 772-0909
jcwhite@clarkhill.com

Counsel for Plaintiff Terre du Soleil, Ltd.
d/b/a Auberge du Soleil

**PLEASE SERVE SUMMONSES UPON**:

United States Small Business Administration
409 3rd Street SW
Washington, D.C. 20416

United States Small Business Administration
c/o Kelly Loeffler, Administrator
409 3rd Street SW
Washington, D.C. 20416